UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESEE
AT KNOXVILLE

STEPHEN EARL BROOKS, )
Plaintiff, )
)
v. ) Case No.: 3:13-CV-278
)
MARK C. HOFMANN, M.D. )
Defendants, )

## MEORANDUM OPINION

Plaintiff has brought this action alleging that defendant, a Florida doctor, committed malpractice and practiced medicine in Tennessee without a license. Plaintiff alleges defendant violated Tenn. Code Ann. §§ 63-6-214(b)(21)(A) and (b)(21)(B) when he communicated recommendations for treatment with Plaintiff's primary care physician in Tennessee.

Defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted [R. 16]. Specifically, defendant asserts: (1) Tenn. Code Ann. § 63-6-214 does not give rise to a private cause of action; (2) plaintiff has failed to comply with the medical malpractice pre-suit statutes in Tennessee; and (3) plaintiff has failed to comply with the medical malpractice pre-suit statutes in Florida. Plaintiff, acting *pro se*, has responded in opposition to the motion to dismiss [R. 19].

1

## Factual Background

Plaintiff was a patient at the Brooks Rehabilitation Center in Jacksonville, Florida in May of 2012. While at the rehabilitation center, defendant began to terminate plaintiff's use of opiate-based prescription pain killers to treat his back pain.

Upon discharge from the rehabilitation center, plaintiff was released into the care of Dr. Wilke, his primary care physician in Tennessee. Plaintiff's discharge orders from defendant stated that "[plaintiff] was advised to avoid opiate medications for his chronic pain" and that "[defendant would] call Dr. Wilke and communicate the patient's progress in the program to bridge the continuum of care." Defendant communicated his recommendation to Dr. Wilke that plaintiff not be prescribed any type of opiate-based prescription pain medication. Defendant believed that plaintiff had become addicted to the opiates and felt they were no longer beneficial to him. Plaintiff contends that defendant and Dr. Wilke colluded to deprive him of opiate-based pain killers, causing him pain and suffering. Apparently, plaintiff does not agree with the doctors' assessment of him and is challenging defendant's communication with Dr. Wilke. Specifically, plaintiff alleges defendant's communication with Dr. Wilke amounted to defendant practicing medicine in the State of Tennessee without a license, in violation of Tenn. Code Ann. §§ 63-6-214(b)(21)(A) and (b)(21)(B).

## **Standard for Rule 12(b)(6) Dismissal**

Rule 8(a)(2), of the Federal Rules of Civil Procedure, requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In the absence of such statement, Federal Rule of Civil Procedure 12(b)(6) states that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Bihn v. Fifth Third Mortgage Co.*, 3:13-CV-00057, 2013 WL 5882063 (S.D. Ohio Oct. 30, 2013)(citing *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277, 279 (6th Cir.1987)).

The United States Supreme Court further clarified the Rule 12(b)(6) pleading standard in 2007, and again in 2009, when it issued its opinions in *Bell Atlantic v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly* the United States Supreme Court held that a plaintiff's allegations must "raise a right to relief above the speculative level," and must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. *Iqbal* further echoed the *Twombly* court's "plausibility" standard by clarifying that "while legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 644. In the absence of any factually plausible allegations, dismissal is proper.

3

## Analysis

**A. Consecutive 12(b) motions.**

Defendant has now filed with the court successive Rule 12(b) motions to dismiss. His initial Rule 12(b)(3) motion for improper venue was denied. He filed the instant Rule 12(b)(6) motion for failure to state a claim prior to answering the complaint and asserts that discretion, as well as federal case law, make this motion proper.

"Successive Rule 12(b) motions are governed by Rules 12(g) and 12(h)(2) of the Federal Rules of Civil Procedure." *Fed. Exp. Corp. v. U.S. Postal Serv.*, 40 F. Supp. 2d 943, 948 (W.D. Tenn. 1999). Rule 12(g)(2) states, "except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Accordingly, unless the moving party's motion falls under one of the three noted exceptions within Rule 12(h)(2), the motion is generally disallowed. Rule 12(h)(2) allows successive motions for three exceptions: (1) failure to state a claim upon which relief can be granted; (2) failure to join an indispensable party; and (3) failure to state a legal defense to a claim permitted or ordered under Rule 7(a). The exception of Rule 12(h)(2) "a defense of failure to state a claim upon which relief can be granted" when read in totality with the other applicable rules is generally intended to only be allowed within the defendant's answer and not in successive motions.

However, federal case law, citing to the spirit, rather than the letter of the law, has allowed a second Rule 12(b) motion to be filed provided: (1) there is no evidence the subsequent motion was filed simply to delay the action; and (2) there is no reason to think

4

that the motion was filed to create an inconvenience for the plaintiff. *Fed. Ex. Corp.*, 40 F. Supp. 2d at 948-949. Based on the record, there is no reason to believe defendant's initial motion was filed either to delay the action, or to burden plaintiff. Accordingly, the court will entertain this motion.

### B. Tenn. Code Ann. § 63-6-214 does not give plaintiff a private cause of action.

Plaintiff asserts that he was injured as a result of a violation of Tenn. Code Ann. § 63-6-214. He contends that his injury, which he details as "pain and suffering," is the result of defendant practicing medicine "outside of the state of Florida in which he is licensed." Plaintiff bases his claim on the telephone conversation that defendant had with Dr. Wilke, plaintiff's primary care physician in Tennessee, following plaintiff's release from the rehabilitation center in Florida.

The court must determine whether Tenn. Code Ann. § 63-6-214 gives rise to a private cause of action for plaintiff. Having considered all relevant case law and statutory history, the court finds that § 63-6-214 does not give rise to a private cause of action. Rather, Tenn. Code Ann. § 63-6-214 was intended to give the Tennessee Board of Medical Examiners the power to regulate the practice of medicine within the State of Tennessee, and not to create a private cause of action.

"Determining whether a statute creates a private right of action is a matter of statutory construction." *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 855 (Tenn. 2010) (citing *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn.1998)). The court's duty in determining whether a private

5

cause of action exists is to attempt to decipher the legislative intent of the statute. "The authority to create a private right of action pursuant to statute is the province of the legislature." *Brown*, 328 S.W.3d at 855. Therefore, the express language of the statute must be examined.

Tenn. Code Ann. § 63-6-214(a) prefaces the statute by stating "The board has the power to . . . ." It is clear from the language of the statute that the legislative intent of § 63-6-214 was to give the Board of Medical Examiners within the State of Tennessee the power to regulate the practice of medicine in Tennessee, and not to create a private cause of action for individual plaintiffs. Therefore, plaintiff's claim for violation of Tenn. Code Ann. § 63-6-214 fails as a matter of law and it will be dismissed.

**C. Plaintiff has not complied with the Tennessee medical malpractice pre-suit statutes.**

Assuming that the complaint asserts a cause of action for medical malpractice in the State of Tennessee, plaintiff has not complied with the applicable pre-suit statutes. In Tennessee, the legislature has seen fit to affix certain procedural hurdles which must be overcome in order to bring a claim for medical malpractice. Most notably are Tenn. Code Ann. § 29-26-115 which requires the claimant to prove the applicable standard of care via expert witness testimony; Tenn. Code Ann. § 29-26-121 which requires the claimant, asserting a potential medical malpractice claim, to give notice to the healthcare providers at least sixty days prior to filing suit; and Tenn. Code Ann. § 29-26-122 which requires the plaintiff to file a certificate of good faith in any "health care liability action in

which expert testimony is required." Because there is no evidence that plaintiff has complied with any of these pre-suit requirements, the court finds that plaintiff's claim for medical practice fails as a matter of law and it will be dismissed.

### D. Plaintiff has not complied with the Florida medical malpractice pre-suit statutes.

In order to bring a claim for medical malpractice in the State of Florida, plaintiff must comply with several pre-suit requirements. The pre-suit requirements are only necessary when the claim is one for medical malpractice. *J.B v. Sacred Heart Hosp. of Pensacola*, 635 So.2d 945, 948-949 (Fla. 1994). Therefore, the court must determine whether the complaint alleges medical malpractice.

"The primary test for whether a claim is one for medical malpractice is whether the claim relies on the application of the medical malpractice standard of care." *Pierrot v. Osceola Mental Health, Inc.*, 106 So.3d 491, 493 (Fla. Dist. Ct. App. 2013) (citing *Weinstock v. Groth*, 629 So.2d 835, 838 (Fla. 1993)). Fla. Stat. § 766.102 states that "the prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." Because any deviation from the appropriate standard of medical care would have to be proven at trial via expert testimony, the Florida legislature has instituted Fla. Stat. § 766.203 which requires the claimant to submit, prior to filing a medical negligence

7

action, a "verified written medical expert opinion from a medical expert." Fla. Stat. § 766.203(2)(b).

Moreover, Fla. Stat. § 766.106(2)(a) requires that "prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence." There is no evidence that plaintiff has complied with this notice requirement, nor has he submitted a verified written medical expert opinion in support of his claim. Because plaintiff has failed to comply with any of the necessary pre-suit requirements for a medical malpractice action in Florida, his claim fails as a matter of law and it will be dismissed.

## Conclusion

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint [R. 16] is **GRANTED**. Plaintiff's complaint is dismissed in its entirety.

Enter:

_____
**UNITED STATES DISTRICT JUDGE**